IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH TODD HINKLE, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO.  C2-05-574 |
| | ) | |
| v. | ) | JUDGE FROST |
| | ) | MAGISTRATE JUDGE KING |
| NORFOLK SOUTHERN RAILWAY | ) | |
| COMPANY, | ) | Robert B. Thompson |
| | ) | Vincent B. Browne |
| Defendant. | ) | Harrington, Thompson, |
| | ) |  Acker & Harrington, Ltd. |
| | ) | 180 North Wacker Drive, 3rd Floor |
| | ) | Chicago, Illinois 60606 |
| | ) | T:  312-332-8811 |
| | ) | F:  312-332-2027 |
| | ) | Email: htah@harringtonlaw.com |
| | ) | *Counsel for Plaintiff Joseph Todd Hinkle* |

**PLAINTIFF JOSEPH TODD HINKLE'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW COMES the Plaintiff, JOSEPH TODD HINKLE, through his attorneys,

HARRINGTON, THOMPSON, ACKER & HARRINGTON, LTD., and pursuant to Federal

Rule of Civil Procedure 56, moves this Honorable Court for entry of an Order granting

summary judgment to the Plaintiff with respect to the liability of the Defendant, NORFOLK

SOUTHERN RAILWAY COMPANY:

**I.      INTRODUCTION AND STATEMENT OF MATERIAL FACTS**

This case arises under the Federal Employers Liability Act, 45 U.S.C. § 51, et seq.

Mr. Hinkle filed suit against his railroad employer, Norfolk Southern Railway Company

alleging, inter alia, that the railroad violated the Locomotive Inspection Act, 49 U.S.C. §

20701, 49 C.F.R. § 229.119 and 49 C.F.R. § 229.45 when an insecurely mounted and

1

braced engineer's seat on a locomotive caused him to fall and sustain a permanently disabling injury to his back.  This motion seeks summary judgment as to liability on the basis of any one of these violations.

On February 27, 2003, Mr. Hinkle was an engineer for the Defendant railroad. (Deposition of Joseph Todd Hinkle pp. 11, 25 attached as Exhibit 1).  He had reported to the yard office in Watkins Yard at 11:00 p.m. on February 26, 2003 to work the "L34" job. (Exhibit 1, p. 30).  The "L34" is a yard job that did switching work in the railroad yard, industry work, worked the ramp and took cars to Buckeye.  (Exhibit 1, p. 30).  Stuart Poe was his conductor.  (Exhibit 1, p. 32).  At the yard office, the yardmaster (Walter Jewell) gave the train orders, switch lists and instructions to Mr. Poe; he told them what unit to use and that it was ready to go.  (Exhibit 1, pp. 33, 156).

Mr. Hinkle and his conductor had several moves to do that night and, after reviewing their orders, went to an engine in track seven of the "light side" (a part of the railroad yard). (Exhibit 1, pp. 34, 47; Exhibit 2[1], Exhibit A).  They boarded the engine and did a visual inspection.  (Exhibit 1, p. 34).  The engineer's seat would not move and was stuck at an angle that "had you sitting kind of wrong."  (Exhibit 1, pp. 34-35, 40-41).  This was reported to the yardmaster by radio who informed the crew to go get another engine for the work that needed to be done.  (Exhibit 1, pp. 35, 42).  The other engine was a remote control

---

[1]

Exhibit 2 consists of the exhibits from Mr. Hinkle's deposition, including Exhibit A (diagram of yard), Exhibit B (diagram of locomotive cab) and Exhibit C (Personal Injury Report.  It also contains the ME-60 form for the locomotive at issue from the evening of February 26, 2003.

unit[2] (NS 5253) and was on track seven or in the pocket and sitting by itself; locomotives located there are typically used for local switching moves.  (Exhibit 1, pp. 35, 48, 50, 53, 88).  It was running.  (Exhibit 1, p. 156).  They walked to it and Mr. Hinkle made another visual inspection.  (Exhibit 1, pp. 38, 49).  His visual inspection consisted of walking around it, making sure nothing was hanging off the side, making sure that the horns and lights worked, checking piston travel and checking the ME-60 to see if it was current.  (Exhibit 1, pp. 39, 51).

It is undisputed that an ME-60 (Exhibit 2) is a form used by the railroad to document compliance with 49 C.F.R. § 229.21 "Daily Inspection" which requires, inter alia, that "each locomotive in use shall be inspected at least once during each calendar day . . . [and] any conditions that constitute non-compliance with any requirement of this part shall be repaired before the locomotive is used."  49 C.F.R. § 229.21.  If an ME-60 is not current, Mr. Hinkle would review the document and then go and check and see if everything is in order.  (Exhibit 1, pp. 39-40).  If he discovered something that was not the way it is supposed to be, that would be added to the ME-60.  (Exhibit 1, p. 40).  If an ME-60 has been prepared in the last 24 hours and he had nothing to add to it, he was under no obligation to prepare one.  (Exhibit 1, p. 63).  Here, the ME-60 had been prepared within twenty-four hours, there were no problems reported, he did not add anything to the form  and the unit was good to go.  (Exhibit 1, pp. 62-63, 158; Exhibit 2, ME-60 prepared in the evening on February 26, 2003).  The visual inspection that Mr. Hinkle performed was no different than an inspection

---

[2]

On a remote control unit, the engineer's seat is not typically used.  (Exhibit 1, p. 158).  The remote unit is typically operated by a conductor working on the ground.

he would make on a switch or a chair in the crew room, whereas, an ME-60 inspection is more thorough.  (Exhibit 1, pp. 157-158).

When Mr. Hinkle boarded the unit, he turned on the lights, put his bag down, checked for supplies, put it from isolation to run and, as noted above, checked the ME-60 to see if there was anything that needed to be checked out.  (Exhibit 1, pp. 52-53, 59). There was one seat (a stool on a post with a back) on the engineer's side and it was right in front of him when he boarded; it was facing the direction that he wanted it to.  (Exhibit 1, pp. 54, 58, 66-67).  He visually inspected the seat as well;  he did not actually get on his knees and look under the seat.  (Exhibit 1, p. 67, 70).  Mr. Hinkle believes his conductor was at a switch.  (Exhibit 1, p. 56).  Mr. Hinkle was intending to move the locomotive through the switch to get to the lead.  (Exhibit 1, p. 57).  As he sat down in the seat, the bottom of the seat went up and slid down, it tipped toward the control stand and Mr. Hinkle's hips went down and he went toward the control stand.  (Exhibit 1, pp. 72-73).  He did not actually hit the ground, but was wedged between the seat and control stand. (Exhibit 1, pp. 73-74).  The seat was in a vertical position, trapped between Mr. Hinkle and the post.  (Exhibit 1, p. 76).  As he tried to push himself up with his arm, the seat fell to the floor.  (Exhibit 1, p. 76).  At that time, he felt a little twinge in his back and his back began tightening up later in the shift.  (Exhibit 1, pp. 77, 94).

Mr. Hinkle then radioed for his conductor and asked him to board the unit.  (Exhibit 1, p. 78).  They agreed to back down to in front of the yard office.  (Exhibit 1, p. 79).  Mr. Hinkle then operated the locomotive while standing and backed to the yard office.  (Exhibit 1, pp. 80, 82).  The seat was still on the floor of the locomotive; the post and seat back were still attached to the floor of the locomotive.  (Exhibit 1, pp. 81-82).  Upon arrival at the

4

yard office, his conductor carried the seat to the yardmaster's office; Mr. Hinkle was not sure if this included the post and seat back.  (Exhibit 1, pp. 82, 84).  The seat bottom looked like it had never been bolted down because the wood around the four bolt holes was not frayed at all; the holes looked like they were drilled and meant to be screwed in, but they never had been.  (Exhibit 1, pp. 83, 101, 103).

## II.    LAW AND ARGUMENT

### A.    Summary Judgment Standard

The purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense.  Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3rd Cir. 1976), *cert. denied*, 429 U.S. 1038 (1977).  Summary judgment is proper if the record, when viewed in its entirety, shows that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  Ohio Civ. R. 56(c);  McGinn v. Burlington Northern Railroad Company, 102 F.3d 295, 298 (7th Cir. 1996);  Mickler v. Nimishillen & Tuscarawas Ry. Co., 13 F.3d 184, 186 (6th Cir. 1993), *cert. denied,* 114 S. Ct. 1835 (1994).  As to materiality, the substantive law will identify which facts are material.  McGinn, 102 F.3d at 298.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue exists only if there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Anderson, 477 U.S. at 249.

The party seeking summary judgment has the initial burden of showing that no issue of material fact exists.  After the movant has made a properly supported summary judgment

motion, "the non-movant does have the burden of setting forth facts showing the existence of a genuine issue of fact for trial." Schlay v. Montgomery, 802 F.2d 918, 920 (7th Cir. 1986).   The non-movant may not rely on the allegations or denials in its pleadings to establish a genuine issue of fact.  Fed. R. Civ. P. 56(e);  Howland v. Kilquist, 833 F.2d 639, 642 (7th Cir. 1987).  Although the opposing party is entitled to the benefit of all favorable inferences that can reasonably be drawn from the underlying facts, the non-movant is not to be granted every conceivable inference.  De Valk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987).  In this case, it is clear that no material fact is in dispute with respect to Defendant's absolute liability and, therefore, Plaintiff is entitled to summary judgment.

**B.    The Locomotive Inspection Act, 49 C.F.R. § 229.119 and 49 C.F.R. § 229.45**

The Federal Employers Liability Act, 45 U.S.C. § 51, et seq., states, in relevant part:

> Every common carrier by railroad while engaging in [interstate] commerce  .  .  .  shall  be  liable  in  damages  to  any  person suffering injury while he is employed by such carrier in such commerce . . . resulting in whole or in part from the negligence of [the carrier].

The Locomotive Inspection Act (formerly known as the Boiler Inspection Act), 49 U.S.C. § 20701, et seq. further provides as follows:

> § 20701 Requirements for use.

> A **railroad carrier may use** or allow to be used a **locomotive** or tender on its railroad line **only when the locomotive or tender and its parts and appurtenances**--

> **(1) are in proper condition and safe to operate without unnecessary danger of personal injury**;

6

**(2)** have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and

**(3)** can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701 (emphasis added).

Under the Federal Employers Liability Act, the injured railroad employee must prove that the railroad was negligent. However, if a violation of the Locomotive Inspection Act is found, proof of negligence is not necessary. Specifically, the Locomotive Inspection Act imposes upon rail carriers an absolute duty to maintain the parts and appurtenances of their locomotives in safe and proper condition. Lilly v. Grand Trunk W.R.R. Co., 317 U.S. 481, 485, 63 S.Ct. 347, 350-51, 87 L.Ed. 411 (1943).[3] Once a plaintiff "presents proof of an unsafe locomotive component and injury which is caused by the unsafe condition," absolute liability is imposed. Williams v. Southern Pacific Transportation Company, 813 F. Supp. 1227, 1230 (S.D. Miss. 1992). Liability does not depend upon notice, either actual or constructive, of the defects under the Act. McCarthy v. Pennsylvania R.R., 156 F.2d 877, 880 (7th Cir. 1946); Fryer v. St. Louis-San Francisco Ry. Co., 63 S.W.2d 47, 51 (Mo. 1933).

Further, the Act and its attendant regulations are to "be liberally construed in the light of [their] prime purpose, the protection of employees and others by requiring the use of safe

---

[3] Significantly, if the Act is violated by the railroad, any consideration of contributory negligence on the part of Mr. Hinkle is barred. Under the Federal Employers Liability Act, no injured employee who has been injured "shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 45 U.S.C. § 53.

equipment." Lilly, 317 U.S. at 486, 63 S.Ct. at 351. With respect to the effect of a violation

of the Locomotive Inspection Act, the Seventh Circuit has further explained:

> In this case, the applicable laws are the BIA [Locomotive Inspection Act] and
> the FELA [Federal Employers Liability Act]. The BIA and the FELA are
> interrelated. The BIA is one of the Safety Appliance Acts ("SAA"), 45 U.S.C.
> §§ 1-43. Strict liability under the FELA results when a rail carrier violates the
> SAA. *Vaillancourt v. Illinois Cent. R.R. Co.*, 791 F. Supp. 734, 738
> (N.D.Ill.1992). Thus, railroads whose employees are injured as a result of
> violations of the BIA will incur strict liability under the FELA. *Id.* There are
> two ways a rail carrier can violate the BIA. **A rail carrier may breach the**
> **broad duty to keep all parts and appurtenances of its locomotives in**
> **proper condition and safe to operate without unnecessary peril to life**
> **or limb, in violation of 45 U.S.C. § 23, or a rail carrier may fail to comply**
> **with the regulations issued by the FRA [Federal Railroad**
> **Administration]**. *Mosco v. Baltimore & Ohio R.R.*, 817 F.2d 1088, 1091 (4th
> Cir.), *cert. denied*, 484 U.S. 851, 108 S.Ct. 152, 98 L.Ed.2d 108 (1987).

McGinn, 102 F.3d at 298-299 (emphasis added). With respect to regulations issued by the

Federal Railroad Administration, the Secretary of Transportation has the authority to issue

appropriate regulations relating to **every area** of railroad safety. 49 U.S.C. § 20103(a)

(emphasis added); see also Eckert v. Aliquippa and Southern Railroad Company, 828 F.2d

183, 186 (3rd Cir. 1987). Moreover, under the Federal Railroad Safety Act of 1970, 45

U.S.C. § 422 et seq., the Secretary of Transportation, acting through the Federal Railroad

Administration, has the authority to promulgate and enforce safety regulations affecting the

working conditions of railroad employees. Pratico v. Portland Terminal Company, 783

F.2d 255, 262 (1st Cir. 1985). This authority has resulted in the promulgation of safety

regulations contained in the Code of Federal Regulations at 49 C.F.R. §§ 200-265. Id.

Of particular relevance to this case, the following safety regulation has been

promulgated:

§ 229.119 Cabs, floors, and passageways.

        *      *      *      *

        (a) Cab seats shall be securely mounted and braced.

49 C.F.R. § 229.119(a).  An additional safety regulation promulgated by the Secretary of Transportation also is implicated in this matter:

        229.45 General Condition.

        All systems and components on a locomotive shall be free of conditions that endanger the safety of the crew, locomotive, or train.  These conditions include: insecure attachment of components . . . .

49 C.F.R. § 229.45 (cited in relevant part).

        Accordingly, if the Defendant railroad either (1) failed to provide Mr. Hinkle with a locomotive that  had parts that were in proper condition and safe to operate, (2) failed to provide him with a seat that was securely mounted and braced, or (3) failed to provide him with a locomotive that was free of conditions that endangered the crew, it is absolutely liable to him for the injuries and damages caused, in whole or in part, by the failure.

        **1.**      **Norfolk Southern Railway Company violated the Locomotive Inspection Act, 49 U.S.C. § 20701.**

        Under the Locomotive Inspection Act, the Defendant railroad had an absolute duty to maintain the parts and appurtenances of its locomotives in safe and proper condition. Lilly v. Grand Trunk W.R.R. Co., 317 U.S. 481, 485, 63 S.Ct. 347, 350-51, 87 L.Ed. 411 (1943).  The seat of a locomotive unit is without question a part of the locomotive.  Spade v. CSX Transportation, Inc., 2004 U.S. Dist. LEXIS 1810, *7-8 (W.D.Mich. 2004) (copy filed as Exhibit 3).  The case of Spade v. CSX Transportation, Inc. is particularly instructive.  In Spade, an engineer was sitting in the engineer's seat when the seat back broke and caused injury to the engineer's back.  Spade, 2004 U.S. Dist. LEXIS at *1-2.  The court

9

found, as a matter of law, that the railroad was in violation of both the Locomotive Inspection Act and 49 C.F.R. 229.119(a).  Id. at *10-11.  The court observed that the seat was not securely braced or supported because the weld holding the side and back supports together was broken.  Id. at *12.  As a result, the court entered summary judgment in favor of the Plaintiff and left only the issue of damages for trial.  Id. at *14.

Here, it is undisputed that the seat was not securely mounted and brace when Mr. Hinkle entered the unit and sat in the seat.  The base of the seat had not been properly screwed into the post mount.  As a result, he fell.  The seat clearly presented an unnecessary danger that rendered the locomotive unit unsafe and not in proper condition. This was a blatant violation of the Locomotive Inspection Act and this violation alone was a cause in whole or in part of the injuries and damages sustained by Mr. Hinkle.

**2. Norfolk Southern Railway Company violated 49 C.F.R. § 229.119.**

It is clear that in addition to the violation of the Locomotive Inspection Act, a specific violation of the code of federal regulations also occurred.  The locomotive seat was clearly not securely mounted and braced.  As a result, when Mr. Hinkle went to sit in the seat, it collapsed and he fell.  The violation of 49 C.F.R. § 229.119 is an additional, independent basis for finding the railroad liable as a matter of law.

**3. Norfolk Southern Railway Company violated 49 C.F.R. § 229.45**

The Defendant railroad also violated another specific provision of the code of federal regulations by failing to provide Mr. Hinkle with a locomotive and components that were free of conditions that endangered the safety of the crew.  Although the regulation specifically lists certain conditions, the listed conditions are not intended to be exhaustive. Diede v. Burlington Northern R. Co., 772 F.2d 593, 595 (9th Cir. 1985) (noting that the use

10

of the term "including" indicates that the list is merely illustrative, not exclusive).

The locomotive unit contained a condition that endangered the safety of the crew and this constitutes a violation of 49 C.F.R. § 229.45.  In particular, the seat was not securely attached, contrary to the requirements of the statute.

### 4. Due to the railroad's statutory violations, it is absolutely liable for the injuries and damages sustained by Mr. Hinkle.

It is apparent that the undisputed facts in this case show without a doubt that the railroad was in violation of both the Locomotive Inspection Act, 49 C.F.R. § 229.119 and 49 C.F.R. § 229.45 due to the insecurely mounted and braced seat on the locomotive. Accordingly, strict liability results and a finding that any of these violations exist as a matter of law is sufficient for entry of summary judgment in favor of the plaintiff.  See McGinn, supra.  In the absence of a genuine issue of material fact with respect to the violation of at least one of these statutory provisions, summary judgment with respect to liability is appropriate.

### C. The locomotive was "in use" for purposes of the Locomotive Inspection Act and code of federal regulations.

Faced with the undisputed facts that the seat was not securely mounted and braced and, as a result, caused injury to Mr. Hinkle, the Defendant railroad may attempt to avoid liability by suggesting that the locomotive was not "in use" at the time of the occurrence.

Whether a locomotive is "in use" under the Locomotive Inspection Act is a question of law for the court.  McGrath v. Consolidated Rail Corporation, 136 F.3d 838, 842 (1st Cir. 1998).  Case law construing the "in use" requirement under the Federal Safety Appliance Act can be helpful in construing the requirement under the Locomotive Inspection Act.

11

Steer v. Burlington Northern, Inc., 720 F.2d 975, 977 n.3.  Locomotives at a maintenance facility undergoing inspection, repair and servicing are not "in use" and are excluded from coverage.  McGrath, 136 F.3d at 842;  see also Angell v. Chesapeake and O. Ry. Co., 618 F.2d 260, 262 (4th Cir. 1980) (the purpose of the "in use" requirement is to exclude from the statute's coverage "only such functions as are necessary to detect and correct those defective conditions for which absolute liability will be imposed") and Pinkham v. Maine Central Railroad Company, 874 F.2d 875, 881 (1st Cir. 1989) (a locomotive that had been taken out of use and left with an engine house to undergo the first stages of "1104 day testing" was not "in use").  However, a locomotive that is being moved from a service track where all servicing, maintenance and inspection work has been performed to a track where it would become part of a consist to pull a train later in the evening is not excluded from coverage.  Angell, 618 F.2d at 260; see also Blankenship v. CSX Transportation, Inc., 1993 Ohio App. LEXIS 3521, *11 (a locomotive that was moving from a service area to a location from which it would make its next "move" later in the day was "in use").  The determinative factors have been found to center on the location of the locomotive at the time of the injury and the activity of the injured party.  Angell, 618 F.2d at 260;  see e.g. Williams v. Norfolk Southern Railway Company, 126 F. Supp. 2d 986 (W.D. Va. 2000) (locomotive was "in use" because plaintiff, a member of the transportation crew, and not an inspection or repair crew, was attempting to release a hand brake to put the train in motion and the car was not awaiting inspection of its safety appliances nor awaiting repair or service).  A locomotive may still be considered "in use" even if it is motionless and not yet on the main track.  Deans v. CSX Transportation, Inc., 152 F.3d 326, 330 (4th Cir. 1998);  see also Brady v. Terminal Railroad Association, 303 U.S. 10, 13, 58 S. Ct. 426, 428 (1938) (a car, although

12

motionless, that had been placed on a receiving track temporarily pending the continuance of transportation was "in use"). Additionally, the fact that a locomotive will not actually depart for a few hours does not mean it is not "in use." Angell, 618 F.2d at 260; see also Blankenship, supra.

In this case, it is undisputed that the locomotive was not in a repair pit or undergoing inspection, repair or maintenance at a maintenance facility. It was on an active yard track, running and ready for service. It was clearly "in use" for purposes of liability under the Locomotive Inspection Act and code of federal regulations.

The Defendant may direct this Court's attention to Maynard v. Norfolk and Western Railway Company, 1995 U.S. App. LEXIS 6188 (4th Cir. 1995), an unpublished decision with no precedential value. In Maynard, a railroad engineer was injured at the beginning of the work day when he tried to enter the cab of a locomotive parked on a side track (it is not clear from the opinion whether he was preparing for transportation with the unit). Maynard, 1995 U.S. App. LEXIS 6188, *1-2. The court found that "Maynard had a duty to inspect the locomotive for any defects, which must be noted on Norfolk and Western's ME-60 form, as well as a duty to assure that any unsafe condition is corrected before putting the locomotive in use." Id. at *3. The court found that the locomotive had not been inspected, the ME-60 form had not been completed and the locomotive had not been put into use. Id. Accordingly, the Locomotive Inspection Act did not apply. Id.

Contrary to Maynard, many courts have found that an engineer and others

13

performing this type of inspection are not excluded from the coverage of the Locomotive Inspection Act.[4]  Even if <u>Maynard</u> does contain an accurate analysis of the "in use" issue (which Plaintiff disputes), in this case, the unit had already received the inspection described in <u>Maynard</u> and the locomotive was "in use" for purposes of the LIA.  Further, as in <u>McGrath</u>, the locomotive here was not being serviced in a place of repair, being stored or awaiting removal to the engine house for repairs.  <u>McGrath</u>,  136 F.3d at 842.  In fact, the locomotive was in active service and was going to be used to conduct switching operations in the railroad yard.

The Defendant, relying on <u>Deans</u>, <u>supra.</u>, may also try and suggest that since the locomotive was not ready for "imminent departure" at the time of the occurrence that it was not in use.  This ignores the fact that a motionless locomotive not in a place of repair or maintenance is still in use for purposes of the LIA.  Further, as in <u>Deans</u>, it is undisputed that Mr. Hinkle was acting as a part of the transportation crew at the time of the occurrence, was not a member of the car department or responsible for maintenance or repair of the unit and that it was his job to help put the train into motion.  Applying the <u>Angell</u> factors of location of the locomotive at the time of injury (on an active track and not in a place of repair) and the activity of the injured party (an engineer preparing for departure), the unit

---

[4]

See, e.g., <u>McGrath</u>, 136 F.3d at 842 (injuries resulting from the inspection, repair and servicing of railroad equipment located at a maintenance facility are excluded from the coverage of the [Act] . . . but the <u>performance of inspection incidental to the task of operating the train as an engineer are not excluded</u>), <u>Brady</u>, 303 U.S. at 13 (<u>one is not to be denied the protection of the Safety Appliance Act because his work was that of inspection for the purpose of discovering defects</u> ) and <u>Bardin v. Consolidated Rail Corp.</u>, 704 N.Y.S.2d 710 (3rd App. Div. 2000) (a car was "in use" when the train was readied for departure and <u>plaintiff was not performing any maintenance function other than a final visual inspection of the train</u>).

was "in use."

The Court should also be aware that railroad Defendants often attempt to suggest that locomotives and/or freight cars engaged in switching operations are not in use and rely on Phillips v. CSX Transportation, Inc., 190 F.3d 285 (4th Cir.1999), cert. denied, 529 U.S. 1004 (2000) and Trinidad v. Southern Pacific Transportation Company, 949 F.2d 187 (5th Cir. 1991) in support of the proposition.  This argument is typically made in the context of the Safety Appliance Act, an Act that applies when a safety appliance, e.g., grab iron, coupler, etc., fails or when the train braking system fails.  Notwithstanding that the requirements of the Locomotive Inspection Act are different from the Safety Appliance Act, the holding of Phillips and Trinidad has been firmly rejected by courts that have more recently considered the issue.  See, e.g., Underhill v. CSX Transportation, Inc., 2006 U.S. Dist. LEXIS 22685 (N.D.Ind. April 24, 2006) (finding that the safety requirements applicable to trains may not apply during switching operations but that the safety requirements applicable to vehicles[5] do apply during switching operations);  Goss v. Alabama Great Southern Railroad, 2006 Ga. App. LEXIS 683 (2d Div. June 12, 2006) (recognizing that the U.S. Supreme Court has held that the provisions of the Safety Appliance Act involving automatic couplers embrace switching operations and holding that Safety Appliance Act claims may not be excluded on the ground that the rail car was involved in a switching operation);  Brasier v. Norfolk Southern Railway Company, Inc., 896 So. 2d 471 (Ala. 2004);  Hoemmelmeyer v. CSX Transportation, Inc., Southern District of Ohio, Cause No.

---

[5]

Of note, a "vehicle" means a car, locomotive, tender or similar vehicle.  49 U.S.C. § 20301.

1:04-CV-00166 (attached as Exhibit 4); <u>Robb v. Burlington Northern and Santa Fe Ry. Co.</u>, 100 F. Supp.2d 867 (N.D.Ill. 2000); and <u>Williams v. Norfolk Southern Ry. Co.</u>, 126 F. Supp. 2d 986 (W.D.Va. 2000).

Finally, the Defendant may also direct this Court to <u>Blankenship v. CSX Transportation, Inc.</u>, 1993 Ohio App. LEXIS 3521 (8th Dist. 1993). However, the <u>Blankenship</u> court merely blindly relied on <u>Trinidad</u> for the proposition that the Locomotive Inspection Act was not applicable to switching operations. This case, and how the erroneous proposition developed, will be further addressed in Reply if the Defendant attempts to suggest that <u>Blankenship</u> contains an accurate statement of the law.

Accepting the Defendant's construction of the "in use" requirements would "restrict the application of the Act by excluding from coverage those activities occurring between servicing and preparing the engine up until the time the engineer takes the controls," "an interpretation that contravenes the legislative purposes behind the Act . . . " <u>Angell v. Chesapeake and O. Ry. Co.</u>, 618 F.2d at 262. Accordingly, Defendant's anticipated contention that the unit was not "in use" is not well taken and Plaintiff's motion should be granted.

<u>III.</u>     <u>CONCLUSION</u>

WHEREFORE, based upon the foregoing, Plaintiff, JOSEPH TODD HINKLE, prays that this Honorable Court enter an Order granting Plaintiff's Motion for Partial Summary Judgment on the issue of Defendant Norfolk Southern Railway Company's liability.

Respectfully submitted,

By:     /s/Robert B. Thompson
        Robert B. Thompson
        Vincent B. Browne
        Plaintiff's Attorneys
        Harrington, Thompson, Acker & Harrington, Ltd.
        180 North Wacker Drive, 3rd Floor
        Chicago, Illinois 60606
        Telephone:   312-332-8811
        Facsimile:   312-332-2027
        Email:       htah@harringtonlaw.com

**CERTIFICATE OF SERVICE**

17

Joseph Todd Hinkle v. Norfolk Southern Railway Company
Case Number: C2-05-574
Judge Frost
Magistrate Judge King

I hereby certify that on July 27, 2006, I electronically filed the foregoing **PLAINTIFF JOSEPH TODD HINKLE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following (copies of which may be obtained through the Court's system):

**ATTORNEY FOR NORFOLK SOUTHERN RAILWAY COMPANY**

R. Leland Evans
Porter, Wright, Morris & Arthur LLP
41 South High Street
Columbus, OH 43215
614/227-2000
614/227-2100 Fax
revans@porterwright.com


and I hereby certify that I have mailed by United States Postal Service the document to those attorneys and/or parties above not registered in the ECF system to assure service.

s/Vincent B. Browne
Vincent B. Browne
One of Plaintiff's Attorneys
Harrington, Thompson, Acker & Harrington, Ltd.
180 North Wacker Drive, 3rd Floor
Chicago, Illinois 60606
Telephone:   312-332-8811
Facsimile:    312-332-2027
Email:         htah@harringtonlaw.com

18

19