UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOSEPH TODD HINKLE,**

      **Plaintiff,**                             Case No. 2:05-cv-574
                                                 JUDGE GREGORY L. FROST
      **v.**                                       Magistrate Judge Norah McCann King

**NORFOLK SOUTHERN**
**RAILWAY COMPANY,**

      **Defendant.**

## OPINION AND ORDER

      This matter is before the Court for consideration of the following sets of filings:

      (1)  Plaintiff's July 27, 2006 Motion for Partial Summary Judgment (Doc. # 22) and its separately docketed supporting memorandum (Doc. # 23), Defendant's memorandum in opposition (Doc. # 32), and Plaintiff's reply memorandum (Doc. # 36);

      (2) Defendant's July 28, 2006 Motion for Summary Judgment (Doc. # 24), Plaintiff's memorandum in opposition (Doc. # 29), and Defendant's reply memorandum (Doc. # 33); and

      (3) Defendant's August 29, 2006 motion to strike (Doc. # 33), Plaintiff's memorandum in opposition (Doc. # 35), and Plaintiff's reply memorandum (Doc. # 39).

      Also before the Court is Plaintiff's request for oral argument on the foregoing motions. (Doc. # 35, at 1 n.1.)  For the reasons that follow, the Court **DENIES** the request for oral argument (Doc. # 35),[1] **GRANTS** Plaintiff's motion for partial summary judgment on the limited issue of liability (Doc. # 22), **DENIES** Defendant's motion for summary judgment (Doc. # 24),

---

[1] Given the issues involved, oral argument is neither helpful nor essential to the fair resolution of the motions.  *See* S.D. Ohio Civ. R. 7.1(b)(2).

and **DENIES AS MOOT** Defendant's motion to strike (Doc. # 33).

## I. Background

Defendant, Norfolk Southern Railway Company, is a common carrier for hire. Plaintiff, Joseph Todd Hinkle, is a locomotive engineer who was employed by Defendant at Watkins Yard in Columbus, Ohio. On February 27, 2003, Plaintiff boarded locomotive engine number 5253 at Defendant's Watkins Yard and went to assume his seat in the locomotive cab. When the seat tipped forward toward the control stand, Plaintiff fell off the seat and into the control stand, which caused Plaintiff to incur what he alleges is a permanently disabling back injury.

Plaintiff subsequently instituted the instant action on June 15, 2005, alleging that the locomotive seat had not been securely mounted and braced. (Doc. # 1.) He later filed an Amended Complaint, which contains three counts: Count I asserts a violation of the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51-60, Count II asserts a violation of the Federal Locomotive Inspection Act ("FLIA"), 49 U.S.C. § 20701 *et seq.*, and Count III asserts a violation of the Code of Federal Regulations, 49 C.F.R. Part 229 *et seq*. Plaintiff seeks $2,000,000 and costs. (Doc. # 26.)

Plaintiff has moved for partial summary judgment (Doc. # 23), while Defendant has moved for summary judgment in its entirety (Doc. # 24). In a memorandum in opposition, Defendant has also moved to strike portions of Plaintiff's affidavit. (Doc. # 33.) The parties have completed their briefing, and all three pending motions are now ripe for disposition.

## II. Discussion

### A. Standard Involved

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment here if Plaintiff, who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the non-moving party, and that party must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52.)

### B. Analysis

The crux of Plaintiff's case is that Defendant is liable for the failure to secure the locomotive seat from which he fell on both theories of negligence and strict liability. Proven negligence can indeed create liability here, as FELA provides:[2]

---

[2] This constitutes Count I of the Amended Complaint. (Doc. # 26 ¶¶ 1-18.)

> Every common carrier by railroad while engaging in [interstate] commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.  Plaintiff also posits, however, that liability need not rest on such negligence where, as here, an unsafe locomotive component has caused an injury.[3]

> Plaintiff bases this latter contention on the FLIA, which provides in relevant part:
>
> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances--
>
> **(1)** are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> **(2)** have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> **(3)** can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701.  Courts have recognized that this statutory scheme imposes strict liability on a railroad carrier that utilizes an unsafe locomotive component, regardless of the carrier's actual knowledge of the defect.  *See Lilly v. Grand Trunk W. R.R. Co.*, 317 U.S. 481, 485 (1943) (analyzing the Boiler Inspection Act ("BIA"), the analogous predecessor statute to FLIA, and explaining that "[n]egligence is not the basis for liability under the Act," which instead imposes absolute liability); *Richards v. Consolidated Rail Corp.*, 330 F.3d 428 (6th Cir. 2003) (discussing analogous BIA and concluding that "the [Federal Safety Appliances Act ("FSAA")] and BIA are substantially, if not in form, amendments to FELA; they dispense, for purposes of employees' suits, with necessity of proving that violations of the safety statutes constitute negligence;

---

[3] This constitutes Count II of the Amended Complaint.  (Doc. # 26 ¶¶ 19-23.)

statutes should be read and applied together"); *cf. Simkins v. Baltimore & Ohio R.R. Co.*, 449 F. Supp. 613, 615 (S.D. Ohio 1976) (analyzing BIA and holding that "Congress, in consideration of the carrier's unconditional duty to have locomotives in safe condition while in use, limited the absolute liability to locomotives while in use on the carrier's line. Thus, when a locomotive is in 'use on the line,' the mandatory duty of the carrier attaches"). It is also well settled that an employee injured as a result of a FLIA violation can bring an action under the FELA based upon the FLIA violation. *See Lilly*, 317 U.S. at 485 (discussing analogous BIA).

Plaintiff additionally notes that strict liability under FELA attaches to the breach of regulations promulgated by the Federal Railroad Administration.[4] *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298-99 (7th Cir. 1996) (citing *Mosco v. Baltimore & Ohio R.R.*, 817 F.2d 1088, 1091 (4th Cir.), *cert. denied*, 484 U.S. 851 (1987)). To establish such liability, Plaintiff directs this Court to two pertinent safety regulations, 49 C.F.R. § 229.119(a) ("Cab seats shall be securely mounted and braced") and 49 C.F.R. § 229.45 ("All systems and components on a locomotive shall be free of conditions that endanger the safety of the crew, locomotive or train. These conditions include [the] insecure attachment of components"). He also relies upon *Spade v. CSX Transp., Inc.*, No. 5:02-CV-129, 2004 WL 2980740 (W.D. Mich. Jan. 30, 2004).

In *Spade*, a district court within this Circuit addressed the issue of whether a broken weld on an engineer's seat constituted a defect under 49 C.F.R. § 229.119(a). That court joined other courts in concluding that an engineer's seat is covered by the FLIA. *Id.* at *3 (citing *Oglesby v. Delaware & Hudson Ry. Co.*, 180 F.3d 458, 461 (2d Cir. 1999); *Oglesby v. Southern Pac.*

---

[4] This constitutes Count III of the Amended Complaint. (Doc. # 26 ¶¶ 24-28.)

*Transp. Co.*, 6 F.3d 603, 605-06 (9th Cir. 1993)). Consequently, the *Spade* court held that partial summary judgment on the issue of liability was appropriate for the plaintiff because the seat was not securely braced or supported and this FLIA violation caused the plaintiff's injury. *Id.* at *4.

*Spade* informs the instant case. Here, the evidence indicates that the locomotive seat had not been properly fastened to the post mount. This is a violation under *both* distinct FLIA approaches; the seat was not in proper condition and safe to operate without unnecessary danger of personal injury and its condition violated 49 C.F.R. § 229.119(a).[5] Accordingly, the FLIA violation creates strict liability if the FELA indeed applies to these facts.

Defendant asserts that the key issue here is thus whether locomotive engine number 5253 was "in use" at the time of Plaintiff's injury. If it was, then absolute or strict liability attaches as discussed above, but if it was not, then there is no such strict liability. *See* 49 U.S.C. § 20701 ("A railroad carrier may use or allow to be used . . .").[6]

Because, as the parties correctly note, the Sixth Circuit has not addressed what the correct "in use" analysis is, there is no controlling "in use" decision.[7] Persuasive authority

---

[5] Although this reasoning would also arguably support a violation of 49 C.F.R. § 229.45, the Court need not and does not reach this moot issue in light of its conclusion regarding 49 C.F.R. § 229.119(a).

[6] The similar and related Federal Safety Appliance Act ("FSAA") employs the same language. *See* 49 U.S.C. § 20302(a). As Defendant correctly notes (Doc. # 32, at 2 nn.1 & 2), the FSAA, FLIA, and FELA are interconnected here. Their application hinges on the "in use" requirement, and Plaintiff has alleged an FSAA violation in his pleading. (Doc. # 26 ¶ 14.)

[7] The issue of what constitutes "use" was presented to the appellate court in *Rogers v. Norfolk Southern Railway Company*, 126 Fed. Appx. 694 (6th Cir. 2005). Because the determination of liability in that case was supported by a jury's finding of negligence in that case, the independent ground rendered any determination of the "in use" FSAA issue unnecessary. *Id.* at 697. Notably, however, the Sixth Circuit stated that "[i]t has long been established that the provisions of FSAA only apply to trains and railcars that are actually 'in use.' " *Id.* at 696 (citing *Brady v. Terminal R.R. Ass'n*, 303 U.S. 10, 13 (1938)).

teaches, however, that courts have applied various approaches to determine whether a locomotive is "in use" for purposes of establishing strict liability.  One approach is to analyze whether the locomotive has passed requisite pre-departure inspections so that it has been released for travel; under this analysis, a train that has not completed inspection is not "in use." *Trinidad v. Southern Pac. Transp. Co.*, 949 F.2d 187, 189 (5th Cir. 1991).  Other courts that have addressed the issue have adopted a less narrow approach, holding that determining "in use" status employs a multi-factor approach.  *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 329 (4th Cir. 1998); *see also Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 289 (4th Cir. 1999), *cert. denied*, 529 U.S. 1004 (2000) (applying *Deans* approach).  Under this approach, "the primary factors [considered] are where the train was located at the time of the accident and the activity of the injured party."  *Deans*, 152 F.3d at 329 (citing *Pinkham v. Maine Cent. R.R. Co.*, 874 F.2d 875, 882 (1st Cir. 1989)).  This multi-factor approach better tracks the goals of the statutory scheme than the overly restrictive *Trinidad* approach and better comports with the requisite liberal construction the Court must accord such a statutory scheme.

  Applying the multi-factor approach, Defendant argues that because locomotive engine number 5253–a single car, not a train–was located on a pocket track in the yard, it was not "in use."  Citing *United States v. Northern Pacific Railway Company*, 254 U.S. 251, 254-55 (1920), and *Erskine v. Consolidated Rail Corporation*, 814 F.2d 266, 270-71 (6th Cir. 1987), the company also asserts that the United States Supreme Court and the Sixth Circuit exclude Plaintiff's activities, the performance of switching operations, from the FSAA's scope of coverage (which means that they are excluded from the FLIA).

  Plaintiff in turn rejects Defendant's arguments by noting that the statutes cover

locomotives without referencing trains and that locomotives fall within the definition of vehicles under the FSAA. *See* 49 U.S.C. § 20301(a) (" 'vehicle' means a car, locomotive, tender, or similar vehicle"). Plaintiff also posits that much of the case law upon which Defendant relies for construing the FSAA's "in use" requirement misconstrues the statutory scheme. The case law *properly construing* the FSAA, Plaintiff argues, teaches that the multi-factor test does not apply to vehicles and that the key point is that a vehicle, or locomotive, is considered "in use" unless taken out of service for repair, service, or maintenance. *See Underhill v. CSX Transp., Inc.*, No. 1:05-CV-196-TS, 2006 WL 1128619 (N.D. Ind. Apr. 24, 2006).

Having considered the arguments at length, the Court concludes that locomotive engine number 5253 was "in use." Defendant's contrary argument and the cases upon which it relies involve the apparent misunderstanding of precedent and statutory application. The district court in *Underhill* examined Supreme Court precedent and conflated appellate decisions in concluding that there is a distinction between railcars and trains that divests much of the "switching operations" case law from the broad (mis-)application it has enjoyed:

> According to the Supreme Court, because a train is an assembly of train cars, or vehicles, the train does not exist until assembly is complete, that is, after switching operations have finished. Thus, safety requirements applicable to trains do not apply during switching operations. *However, safety requirements applicable to rail vehicles do apply during switching operations, because switching operations necessarily involve the "use" of rail vehicles.*

*Underhill*, 2006 WL 1128619, at *4 (emphasis added) (construing *United States v. Erie R.R. Co.*, 237 U.S. 402 (1915)). Thus, the *Underhill* court concluded, "[b]ecause this case involves a safety requirement that is applicable to rail vehicles . . . the question is whether this *vehicle* was in use and cases deciding whether a train was in use have limited relevance." *Id.* at *4 (emphasis added).

Another district court has explained that the apparent misunderstanding of "switching" law arises in part because of the Fourth Circuit's interpretation of Supreme Court precedent. *Williams v. Northern S. Ry. Co.*, 126 F. Supp. 2d 986, (W.D. Virginia 2000) (discussing *Deans* and *Phillips*). The *Williams* court explained:

> Defendant relies heavily on language in *Phillips* that states "the FSAA does not apply to train cars in switching operations." . . . [T]his quote is an overly broad statement that is inessential to the court's decision in *Phillips*. Indeed, it appears to be a misstatement of the holding of [*United States v. Seaboard Air Line R.R. Co.*, 361 U.S. 78 (1959)]. *Seaboard* involved a violation of the FSAA requirements concerning power air brakes, not hand brakes. The FSAA requires all *trains* to have power air brakes. Individual rail cars are not separately required to have power air brakes, though they are required to have hand brakes. The question before the Court in Seaboard was whether the movement of locomotives and cars from one rail yard to another–in the process traversing several road crossings–constituted "train movement" for the purposes of the FSAA. In setting out the rule for when a string of engines and cars counted as a "train" for FSAA purposes (thus implicating the air brake provisions), the Court held that " 'switching operations' were not 'train' movements within the meaning of the Act." [361 U.S. at 80]. More to the point, the Court in *Seaboard* did not hold that train cars were outside the FSAA during switching operations. Thus, the Fourth Circuit's insertion of "cars" into "does not apply to train cars in switching operations," 190 F.3d at 289, distorts the holding of *Seaboard*. Moreover, this broad language was inessential to the holding of *Phillips*. As the court itself emphasized, the decision in *Phillips* hinged on the location and activity factors enunciated in *Deans*. For these reasons, . . . the "switching operation" quote in *Phillips* that Defendant relies on should be treated as a dictum, not a holding.

*Williams*, 126 F. Supp. 2d at 992 (footnote omitted). That same district court judge also explained the flaw in reading, as Defendant does, *Northern Pacific*, 254 U.S. 251, to stand for the proposition that "a railcar is not in use during switching operations." *Williams*, 126 F. Supp. 2d at 992 n.5. This Court agrees with the analysis in *Williams*:

> It is important to note . . . that *Northern Pacific* concerned only the *air brake* provision of the FSAA, which . . . applies only to "trains." Thus, the case holds only that a *train* is not in use (because it is not properly speaking a "train") during switching operations. Any suggestion in *Northern Pacific* as to the applicability of the FSAA to *railcars* during switching operations is therefore dicta.

*Williams*, 126 F. Supp. 2d at 992 n.5.  It therefore appears that no Supreme Court precedent precludes application of the statutory schemes at issue in this case.

Similarly, Defendant's reliance on Sixth Circuit precedent does not prove dispositive.  As noted, Defendant directs the Court to the appellate court's decision in *Erskine*, 814 F.2d 266.  That case indeed stands for the proposition that the FSAA does not apply when a train is involved in a switching movement when the injury occurs.  In reaching this conclusion, the appellate court interpreted *Erie* to hold that the FSAA did not cover switching operations.  814 F.2d at 270.  But *Erskine* notably dealt only with the applicability of the FSAA to a *train* involved in a switching movement, however, and must be read in that limited context; to infer a broader meaning would be to broaden that court's reasoning to issues not before the panel.[8]  This Court therefore concludes that the Sixth Circuit has *not* held that switching operations involving a single railcar are exempt from the FSAA and FLIA.[9]

In light of the foregoing, the Court is not inclined to engage in the unqualified application of the *Deans* multi-factor test here.  This Court agrees with *Underhill*'s analysis of the cases establishing that test:

> The problem is that both *Deans* and *Phillips* considered factors that are only relevant to determining when a train is in use, and have little application when determining whether a rail vehicle is in use.  For example, both cases looked at whether departure of a train was imminent.  *Deans,* 152 F.3d at 330; *Phillips,* 190

---

[8] *Erie* itself notes that some FSAA "provisions deal with running a train, while the other requirements relate to hauling or using a car," recognizing that switching operations invoke the latter without encompassing the former.  237 U.S. at 407-08.  The Supreme Court's reasoning was thus explicitly confined to the reach of air-brake provisions, not to the entirety of the FSAA.

[9] Previously addressing the "in use" requirement of the FSAA, the Sixth Circuit found that the FSAA applied to switching operations.  *Fort Street Union Depot Co. v. Hillen*, 119 F.2d 307 (6th Cir. 1941).

> F.3d at 289-90.  This factor has no application as to whether a vehicle was in use, as a plain understanding of the word "use" suggests a vehicle used to assemble a train is in use, whether the train is about to leave or not.  The factors cited as most important by *Deans* and *Phillips,* the activity of the party when he was injured and the location of the train or vehicle, are important factors, but must be considered in the context of the use of a vehicle, not the use of a train.

*Underhill*, 2006 WL 1128619, at *5.  The Court therefore declines to regard train-movement cases as meaningful in this context, agrees with the well-reasoned *Underhill* and *Hoemmelmeyer v. CSX Transportation, Incorporated*, No. 1:04-CV-00166, 2005 WL 2124259 (S.D. Ohio Aug. 30, 2005), and employs a totality-of-the-circumstances, multi-factor test that places the *Deans* factors in the applicable, correct context.

In this case, locomotive engine number 5253 was located in the yard and was not intended to be put into service on a street railway.  Additionally, Plaintiff's activities were switching operations.  But neither statutory text nor Supreme Court precedent exclude switching operations of a railcar, as opposed to a train, from the coverage of the FSAA (and by extension the FLIA).  And there is no evidence here that the locomotive in question was being serviced, maintained, inspected, or repaired.  Rather, the railcar was being used in a manner consistent with its function;[10] a vehicle used to assemble trains is fulfilling a purpose independent of

---

[10] In addition to Plaintiff's own deposition and the admissions of Defendant, Plaintiff contends that a filed transcript of the deposition of Michael Kelly supports this conclusion. (Doc. # 34, Kelly Dep.)  The deposition transcript, however, lacks an accompanying *signed* court reporter certification, which is an "essential portion[] of [the] transcript[]." S.D. Ohio Civ. R. 7.2(f).  The transcript therefore fails to qualify as proper summary judgment evidence under Fed. R. Civ. P. 56.  *See* Fed. R. Civ. P. 30(f)(1); *Soliday v. Miami County, Ohio,* No. C-3-91-153, 1993 WL 1377511, at *5 n.4 (S.D. Ohio Nov. 22, 1993) (stating that "the Court cannot consider" deposition testimony referenced in summary judgment reply memorandum but not filed with court); *Moore v. Florida Bank of Commerce*, 654 F. Supp. 38, 41 n.2 (S.D. Ohio 1986) (unauthenticated deposition not filed with court is not proper material under Rule 56); *Podlesnick v. Airborne Express, Inc.*, 550 F. Supp. 906, 910 (S.D. Ohio 1982) (depositions not filed with court but referred to in summary judgment memoranda were not considered in court's

whether a train is about to depart. The statutory policy considerations imposing strict liability logically apply here to a single car involved in switching operations because the goal is to create safety when the car *is being used* to fulfill its purpose (whereas it would be unfair to impose strict liability on a *train* that is being *prepared for use* via switching operations but not yet *being used* to fulfill its purpose). Thus, the FSAA and FLIA apply here, locomotive engine number 5253 was "in use," and strict liability exists.

Having found that Plaintiff has established strict liability as a matter of law, the Court need not and does not address Defendant's moot arguments over Plaintiff's negligence claim under the FELA. Consequently, Defendant's motion to strike the curiously conclusory paragraph 14 of Plaintiff's August 17, 2006 affidavit is similarly moot.

---

decision). *See also Orr v. Bank of America, NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (discussing unauthenticated deposition extracts). Accordingly, the Court has not considered the Michael Kelly transcript.

### III.  Conclusion

For the foregoing reasons, the Court **DENIES** the request for oral argument (Doc. # 35), **GRANTS** Plaintiff's motion for partial summary judgment on the limited issue of liability (Doc. # 22), **DENIES** Defendant's motion for summary judgment (Doc. # 24), and **DENIES AS MOOT** Defendant's motion to strike (Doc. # 33).

**IT IS SO ORDERED**.

      /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE